# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MIRNA RUBIDIA ARTIGA CARRERO,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-16-3939 |
| **CHRISTOPHER FARRELLY, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Mirna Rubidia Artiga Carrero ("Plaintiff") filed a two-count complaint against Baltimore County Police Officer Christopher Farrelly in his individual capacity and against Baltimore County seeking declaratory relief and compensatory damages stemming from her alleged unlawful arrest in 2014. The Court previously denied a motion to dismiss jointly filed by Defendants Farrelly and Baltimore County. In its memorandum denying that motion, the Court identified an apparent conflict of interest in the joint representation of Officer Farrelly and Baltimore County by Baltimore County Attorney James Nolan. The Court, however, afforded counsel for Defendants an opportunity to file a response confirming his compliance with Rule 19-301.7 of the Maryland Attorneys' Rules of Professional Conduct, which deals with conflicts of interest. Now pending before the Court is the County Attorney's motion asserting his compliance with Rule 19-301.7 and seeking permission to continue to represent both Officer Farrelly and Baltimore County in this case. (ECF No. 40.) In addition, defense counsel has filed affidavits from Defendants indicating that despite the potential conflict each still wishes to be represented by the County Attorney. For the reasons set forth below, the motion will be

DENIED, and Mr. Nolan will be DISQUALIFIED from representing Officer Farrelly for the remainder of the proceedings in this case.

## I.  Background

Defendants previously contended that Plaintiff's complaint fails to state a claim against Officer Farrelly or the County because: (1) Plaintiff does not allege she is a "citizen of the United States or other person within the jurisdiction thereof," (State Def.'s Mot., ECF No. 13 at 1); (2) Plaintiff fails to allege that Defendants caused her injury; and (3) Officer Farrelly was acting under color of federal—not state—law when he stopped and arrested Plaintiff. Furthermore, Defendants asserted one individual defense each on behalf of the County and Officer Farrelly. First, the County argued that it provided adequate training to Officer Farrelly and therefore is not liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Additionally, the County contended that Plaintiff's *Monell* claim failed as matter of law because she did not allege that the County's purported deficient training "amounted to deliberate indifference to rights of persons with whom police come into contact." (ECF No. 13-1 at 13.) Second, Officer Farrelly argued that he is entitled to qualified immunity.

The Court rejected each of Defendants' arguments and denied their motion to dismiss. (ECF Nos. 33 & 34.) Specifically, and as pertinent here, the Court found that Plaintiff plausibly alleged that Officer Farrelly violated her constitutional rights when he stopped her without probable cause or reasonable suspicion and then prolonged her detention for an unreasonable period of time based solely on his suspicion that she had committed a civil immigration violation. As to both Defendants, the Court rejected the argument that Officer Farrelly was acting under color of federal law at all relevant times and that neither he nor the County is subject to liability under 42 U.S.C. § 1983 as a result. Further, the Court found that Officer

Farrelly was not entitled to qualified immunity because his conduct, as alleged in the Complaint, violated clearly established law at the time he stopped Plaintiff. Additionally, the Court found that Baltimore County was not entitled to dismissal because Plaintiff plausibly alleged that the County was deliberately indifferent to specific deficiencies in its training related to the detention of aliens, which made a constitutional violation of the kind suffered by Plaintiff a highly predictable consequence.

## II. Standard for Disqualification of Counsel

"[A] district court has an obligation to foresee problems over representation that might arise at trial and head them off beforehand." *United States v. Basham*, 561 F.3d 302, 323 (4th Cir. 2009) (quoting *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997)). Given its obligation in this regard, a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* (quoting *Wheat v. United States*, 486 U.S. 153, 163 (1988)). Accordingly, although a litigant is entitled to "a presumption in favor of [his] counsel of choice," *Wheat*, 486 U.S. at 164, that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a *serious potential for conflict*." *Basham*, 561 F.3d at 323 (quoting *Wheat*, 486 U.S. at 164). "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court," *Wheat*, 486 U.S. at 164, and the court should "resolve all doubts in favor of disqualification," *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal quotations omitted).

As the Court previously noted, the circumstances present in this case are ripe for a potential conflict of interest between Defendants. *See Manganella v. Keyes*, 613 F. Supp. 795, 797 (D. Conn. 1985) ("An inherent conflict of interest arises in a § 1983 action when co-defendants in a suit are a local government and police officers or other employees in their individual capacity, as differing theories of liability and differing defenses are applicable to each defendant."); *Shadid v. Jackson*, 521 F. Supp. 87, 90 (E.D. Tex. 1981) (noting that "the interests of a public employee and his employer, as co-defendants in a § 1983 action, are generally adverse to one another"); *Gaspar v. Dicks*, No. 08-13707, 2011 WL 5975067, at *2 (E.D. Mich. Nov. 29, 2011) ("[G]iven the risk of conflicts of interest in § 1983 suits, 'the judge and the parties have joint responsibility to guard interests that are actually threatened.'" (quoting *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986))); *cf. Granberry v. Byrne*, No. CIV.A. 11-4329, 2011 WL 4852463, at *5 (E.D. Pa. Oct. 13, 2011) (denying motion to disqualify city attorney in § 1983 action because "the legal positions of both Defendants [we]re completely aligned and any possibility of inconsistent defenses coming into play [wa]s, at best, hypothetical"); *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 33 (E.D.N.Y. 2009) (denying motion to disqualify county attorney in § 1983 action because the County Police Officer Indemnification Board had already determined that the officer defendant "acted within the proper discharge of [his] duties and within the scope of [his] employment" and thus "any judgment against [the employee] will effectively be one against the County"). Indeed, even where a municipality "does not seek to avoid liability by claiming the employee acted outside the scope of his employment, there remains a potential conflict" because "the officer[] could claim a good faith, qualified immunity based in part on improper or inadequate training"—"a defense that may be good for the officer but bad for the City." *Ricciuti v. N.Y.C. Transit Auth.*, 796 F. Supp. 84, 88 (S.D.N.Y. 1992).

*III. Analysis*

The Court's specific concern raised in its prior memorandum and order was that defense counsel's ethical obligation to each of his clients would require that he assert conflicting positions at some point in these proceedings. The Court observed that counsel was close to having done so already and that the potential for such conflict only increased following the Court's denial of Defendants' motion to dismiss. In his motion, counsel for Defendants summarily dismisses the Court's concerns regarding the apparent conflict generated by his continued representation of Officer Farrelly and Baltimore County. Rather than address the Court's concerns with joint representation *moving forward*, defense counsel focuses exclusively on his *previous* arguments asserted in Defendants' motion to dismiss. But the Court rejected these arguments and therefore they have no bearing on the potential for conflict at this time.[1] Simply put, counsel fails to offer any relevant explanation to assuage the Court's concerns because his current motion is entirely disconnected from the current posture of the case.

The Court's previous memorandum and order made clear that Plaintiff had stated a plausible claim that Officer Farrelly unilaterally detained her based solely on suspicion of a civil immigration violation *prior to receiving any directive to do so from ICE*. Moreover, the Court found that Plaintiff plausibly alleged that the length of her detention was unreasonable based on the purported initial justification for the stop. The Court, however, agreed with Defendants that once Officer Farrelly was directed by ICE to detain Plaintiff, his actions from that point on,

---

[1] Of course, defense counsel may reassert these positions in a motion for summary judgment if discovery reveals that they have merit, and the Court does not mean to suggest otherwise. But it is inadequate for defense counsel to assert that merely because he previously advanced generally consistent arguments on behalf of both defendants he will necessarily be able to continue to maintain this delicate balance between the defendants' competing interests. *See Shadid v. Jackson*, 521 F. Supp. 87, 90 (E.D. Tex. 1981) ("Defendants correctly observe that 'no conflict can exist so long as these defendants make common cause,' but there is no way of knowing if and when that strategic posture may change.")

standing alone, did not violate Plaintiff's constitutional rights (or, at the very least, no such violation was clearly established at the time). In other words, the Court identified a narrow time period during which Officer Farrelly's actions may have amounted to a constitutional violation of a right that was clearly established. The relevant time period began with Officer Farrelly's decision to stop Plaintiff's vehicle and ended with his communication with ICE. Yet defense counsel wholly fails to address the potential conflicting defenses that may be asserted by Officer Farrelly and the County as it pertains to Officer Farrelly's conduct during the relevant portion of the stop. Instead, defense counsel rehashes the arguments previously made by Defendants and rejected by the Court.

First, defense counsel contends that he previously argued that Officer Farrelly was acting within the scope of his employment and consistent with his training "at all relevant times." (ECF No. 40 at 3.) This is a mischaracterization of counsel's argument. In fact, counsel argued that neither Officer Farrelly nor Baltimore County were subject to liability under § 1983 because Officer Farrelly was acting under color of federal—not state—law when he arrested Plaintiff at ICE's direction. Whether Officer Farrelly was acting under color of federal or state law at the time he arrested Plaintiff, however, has no bearing on whether he was acting within the scope of his employment and consistent with his training prior to receiving directions from ICE—i.e., the relevant time period. Thus, defense counsel did not previously and does not now address Officer Farrelly's conduct "at all relevant times." To the contrary, he fails to address his conduct at the only relevant time. In this regard, counsel's current motion simply does not aid the Court in any way.

Counsel makes the same error in addressing Officer Farrelly's qualified immunity defense. Counsel previously argued that Officer Farrelly was entitled to qualified immunity

6

because he complied with clearly established law in stopping Plaintiff and detaining her. In other words, defense counsel contended that Officer Farrelly's conduct, as alleged in the complaint, did not amount to a constitutional violation. And to the extent his conduct did amount to a constitutional violation, counsel argued that the law was not clearly established at the time. But the Court found the opposite in its memorandum and order. In other words, these arguments, having been rejected by the Court, are no longer relevant and simply do not address the Court's concerns regarding the potential for conflict moving forward. Again, defense counsel fails to provide a meaningful response to the Court's concerns.

Moreover, counsel ignores at least one argument he previously asserted on behalf of the County that *does* remain relevant moving forward. In Defendants' motion to dismiss, counsel argued that Baltimore County is not liable under *Monell* for failure to train because it did in fact train Officer Farrelly regarding his authority (or lack thereof) to detain aliens, like Plaintiff, suspected of civil immigration violations. This was undoubtedly a valid argument to assert on behalf of the County to avoid liability. At the same time, however, this argument was, at least implicitly, detrimental to Officer Farrelly. Defense counsel arguably avoided any actual conflict at the time by arguing that Officer Farrelly's conduct was consistent with his training and with clearly established law. In light of the Court's ruling, however, that argument is now foreclosed. The Court found that Plaintiff plausibly alleged that Officer Farrelly's conduct violated her constitutional rights and that such rights were clearly established at the time of the alleged violation. Accordingly, in the case's *current posture*, defense counsel may assert that Officer Farrelly was adequately trained and acted contrary to his training, thereby avoiding liability for the County, or he may assert that Officer Farrelly's training was inadequate, thereby shifting liability from the officer to the County, but he may not assert both positions. Moreover, and

7

more troubling, by previously asserting that Officer Farrelly was adequately trained, counsel has arguably waived a defense that would otherwise be available to Officer Farrelly. Additionally, because defense counsel focuses exclusively on his past arguments, he provides no explanation as to why he would not be ethically compelled to argue on behalf of the County that to the extent Officer Farrelly's conduct was a violation of clearly established law (an ultimate finding the Court has concluded is plausible at this state of the litigation), it was contrary to his training and therefore the County may not be held liable.[2] "The Court does not suggest that these are the only or best trial strategies," *Shadid*, 521 F. Supp. at 89, and perhaps there is a way that counsel could manage to delicately avoid conflict as this case progresses. But, at the very least, this example (and there may be more the Court has not identified) "demonstrate[s] the serious possibility of conflict of interest which may arise at trial." *Id.* Thus, even putting aside the apparent actual conflict that has already arisen, there is more than enough evidence of a serious potential for conflict moving forward so as to preclude Defendants' continued joint representation by the County Attorney.

As the Court noted in its memorandum and order, discovery may well reveal that Officer Farrelly's conduct did not amount to a constitutional violation. Likewise it may reveal that Officer Farrelly was adequately trained by the County and that he complied with his training at

---

[2] The Court notes that Maryland law provides that local governments must indemnify their employees "for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code. Ann. Courts & Judicial Proceedings § 5-303(b)(1). This law *may* somewhat reduce the potential for conflict given that the County *may* ultimately be responsible for any judgment entered against Officer Farrelly. *See Manganella*, 613 F. Supp. at 798. However, the indemnification statute does not entirely eliminate the potential conflict. *Id.* (noting that some conflict may remain even in the presence of similar law in Connecticut because "the municipality is only liable for actions of the officer 'in the discharge of his duties'"). As an initial matter, defense counsel failed to invoke the indemnification statute, thereby leaving the Court to hypothesize as to whether the County even believes this law applies under the current circumstances. Putting aside this initial problem, even assuming the Maryland indemnification law applies to constitutional torts like those at issue here (and to Baltimore County employees), the County would still only be liable for the actions of Officer Farrelly "committed . . . within the scope of employment with the local government." Md. Code. Ann. Courts & Judicial Proceedings § 5-303(b)(1). And, as already noted, defense counsel has yet to take a definitive position on Officer Farrelly's alleged conduct prior to receiving direction from ICE to arrest Plaintiff, although he has implicitly suggested that such conduct was contrary to his training.

8

all relevant times. However, it may also reveal the opposite, thereby bringing in to sharp focus the serious potential conflicts identified by the Court and placing counsel in an untenable situation. Simply put, despite the County Attorney's confidence, the Court is not convinced that one lawyer can adequately represent the interests of Officer Farrelly and Baltimore County. Requiring independent counsel for each of the defendants moving forward will not only ensure that their own interests are fully represented but also will ensure that the integrity of the judicial process is preserved. In short, "[t]he potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants." *Id.*

## *IV. Conclusion*

For the foregoing reasons, Defendants' motion seeking to retain Baltimore County Attorney James Nolan as their joint representative (ECF No. 40) will be DENIED and Mr. Nolan will be DISQUALIFIED from representing Defendant Christopher Farrelly.

DATED this 1st day of December, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge