# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MIRNA RUBIDIA ARTIGA CARRERO,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-16-3939 |
| **CHRISTOPHER FARRELLY, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Mirna Rubidia Artiga Carrero ("Plaintiff") filed a five-count Complaint against various state and federal officials and entities seeking declaratory and injunctive relief, compensatory damages, and punitive damages stemming from her alleged unlawful arrest in 2014, which she contends was caused in part by federal policy regarding the identification and apprehension of aliens, like her, that are subject to a final order of removal. Defendants the United States of America; Jefferson B. Sessions III, Attorney General of the United States; Elaine C. Duke, Acting Secretary of the Department of Homeland Security ("DHS"); and Thomas D. Homan, Acting Director of Immigration and Customs Enforcement ("ICE") (the "Federal Defendants") filed a motion to dismiss the Complaint, which the Court granted in part and held in abeyance in part. (Order, ECF No. 34.) Now pending before the Court is Plaintiff's Motion for Leave to File Amended Complaint. (ECF No. 43.) For the reasons set forth below, Plaintiff's Motion will be DENIED.

## I. Background[1]

In her original Complaint, Plaintiff alleged five causes of action stemming from the entry of her information in the National Crime Information Center ("NCIC") database and her subsequent seizure based on that information. Three of those claims, Counts Three through Five, were asserted against the Federal Defendants. Specifically, in Count Three she alleged that the Federal Defendants' entry and maintenance of her civil administrative warrant in NCIC caused her to be unlawfully seized in violation of the Fourth Amendment and that she was at imminent risk of suffering another unlawful seizure in the future. In Count Four, she alleged that the individual Federal Defendants exceeded their statutory authority by including civil warrants like hers in the NCIC database. Plaintiff sought declaratory and injunctive relief for her claims in Counts Three and Four.[2]

Plaintiff's claims for prospective relief (i.e., Counts Three and Four) were premised on the Federal Defendants' continued maintenance of her civil administrative warrant in NCIC, yet the Federal Defendants presented evidence that Plaintiff's civil warrant was "cleared" from the NCIC database on September 11, 2014, more than two years before she filed her Complaint. (Reply Mem. in Supp. of the Fed. Defs.' Mot. to Dismiss, ECF No. 32, at 7 n.7.) As a result, the Court found that Plaintiff lacked standing to assert her claims for injunctive and declaratory relief because she could not show that her purported injury—"risk of suffering an unlawful seizure by state or local law enforcement officials in the future," (ECF No. 1, ¶¶ 59, 62)—was real or imminent. However, because the Federal Defendants had not presented this jurisdiction-

---

[1] The relevant factual background underlying Plaintiff's Complaint is set forth in the Court's previous order and need not be repeated here.

[2] In Count Five, Plaintiff asserted intentional tort claims against the Federal Defendants. Those claims were dismissed by the Court for lack of subject matter jurisdiction and are the subject of a separate motion for reconsideration filed by Plaintiff. Although Plaintiff has submitted superficial amendments to Count Five, they are not relevant to the Court's resolution of the instant motion. Plaintiff's Motion to Reconsider is addressed separately.

stripping evidence until their reply brief, the Court held in abeyance its decision regarding Plaintiff's standing. The Court granted Plaintiff ten days to "provide . . . 'further particularized allegations' in support of her contention that the Federal Defendants continue to maintain a civil warrant of removal for her in the NCIC database." (Memorandum, ECF No. 33, at 40.)

Plaintiff has not provided any additional allegations in support of her claim that the Federal Defendants continue to maintain a civil warrant of removal for her in the NCIC database. Instead, she seeks leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## II. Relevant Legal Standards

### A. Legal Standard for Motion for Leave to Amend

Plaintiff's motion for leave to amend her Complaint is governed by Rule 15(a), which directs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is considered futile if it cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### B. Legal Standard for Dismissal under Rule 12(b)(1)

The Federal Defendants contend that Plaintiff's motion for leave to amend should be denied as futile because, *inter alia*, she still lacks standing and therefore her proposed Amended Complaint could not survive a motion to dismiss. A challenge to a plaintiff's standing "implicates th[e] court's subject matter jurisdiction." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008). The Plaintiff bears the burden of proving subject-

matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (noting challenge may be either facial, i.e., complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, i.e., jurisdictional allegations of complaint are not true); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."). In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

C. *Analysis*

A plaintiff's standing to sue in federal court is "an integral component of the case or controversy requirement" of Article III. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). To have Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff who seeks declaratory or injunctive relief must show that she is in danger of being injured by the opposing party's conduct and that the danger is both "real" and "immediate" and neither "conjectural" nor "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see McBurney v.*

*Cuccinelli*, 616 F.3d 393, 410–11 (4th Cir. 2010) (holding that "to maintain standing for declaratory and injunctive relief" a plaintiff must "plead an[] ongoing injury").

Plaintiff seeks leave to amend her Complaint in order to show that she has standing to obtain prospective declaratory and injunctive relief regarding the Federal Defendants' entry of her civil administrative warrant in NCIC. She contends that her amended pleading plausibly alleges both a present injury and a substantial risk of future injury stemming from her "cleared" record in NCIC. First, Plaintiff contends that "the presence of [her] identifying information in the NCIC database, suggesting a criminal history, subjects her to a substantial risk of increased police scrutiny, including unlawful seizure and investigation." (ECF No. 43, at 4.) This is the same injury that Plaintiff asserted in her original complaint (i.e., the threat of unlawful seizure in the future). Second, she argues for the first time that maintaining her information in NCIC subjects her to a present and ongoing injury—"[s]tigma and reputational harm" by painting her as a criminal. (*Id.*) The Federal Defendants contend that Plaintiff's motion should be denied because her proposed amendments are futile. The Court agrees with the Federal Defendants, and therefore Plaintiff's Motion will be DENIED.

Plaintiff's first argument—that she is subject to increased scrutiny and an imminent risk of future arrest based on her "cleared" record in NCIC—is unavailing. Plaintiff's proposed Amended Complaint has simply been revised to reflect the accurate status of her NCIC record as "cleared." But the Court already found that Plaintiff lacked standing to seek declaratory and injunctive relief based on these very facts. The Court explicitly found that because "Plaintiff's information was "cleared" from the NCIC database on September 11, 2014, . . . she cannot show that she is in real and imminent danger of future injury." (ECF No. 33, at 38.) Now, Plaintiff

5

simply asks that the Court reconsider its decision; this is not proper.[3] Regardless, the Court has reviewed Plaintiff's new arguments and finds them without merit.

Plaintiff's purported risk of future injury is far too speculative and implausible to confer standing. Plaintiff contends that the presence of her "cleared" record in NCIC:

- alerts law enforcement personnel that Ms. Artiga was, *at one time*, subject to arrest; and

- subjects her to the substantial risk that she will be targeted by law enforcement personnel for further stops, scrutiny, and investigation, based on their knowledge of a *prior* arrest warrant against her.

(Amended Compl., ECF No. 43-1, ¶ 39–40 (emphasis added).) As an initial matter, Plaintiff's NCIC record does not indicate that she was "subject to arrest" or that there was "a prior arrest warrant against her." The record simply says "cleared." Moreover, even assuming that Plaintiff's NCIC record conveyed this historical information, the fact that Plaintiff was, "*at one time*, subject to arrest," does not put her at imminent risk of being arrested *in the future*. (*Id.* ¶ 39 (emphasis added).) Plaintiff also alleges that "[t]here is a substantial likelihood that officers will stop Ms. Artiga and will see her record in the NCIC database." (*Id.* ¶ 40.) This argument puts the cart before the horse. The presence of her information in NCIC does not create a "substantial likelihood that officers will stop [her]"; rather, such information would be accessed only after an officer stopped Plaintiff for some *other* reason. Finally, Plaintiff alleges that "*if* [her] Motion to Reopen her immigration case or her applications for further relief are denied, civil immigration information about Ms. Artiga *may* again be unlawfully entered into the NCIC system, *potentially* as early as October 18, 2017." (*Id.* ¶ 51 (emphasis added).) These allegations—which depend

---

[3] Plaintiff has styled her motion as a "Sur-Reply in Opposition to Federal Defendants' Motion to Dismiss and Motion for Leave to File Amended Complaint." (ECF No. 43.) The Court, however, did not grant Plaintiff permission to file a surreply. Local Rule 105.2(a) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). Rather, the Court granted Plaintiff the opportunity to present "'further particularized allegations' in support of her contention that the Federal Defendants continue to maintain a civil warrant of removal for her in the NCIC database." (Memorandum, ECF No. 33, at 40.) Regardless, the Court has considered all of her arguments advanced in favor of standing.

entirely on a host of future events which may or may not occur—are far too "conjectural" and "hypothetical" to confer standing. *Lyons*, 461 U.S. at 102.

Plaintiff's second argument—that the Federal Defendants' conduct subjects her to a present and ongoing reputational injury—also fails to cure the jurisdictional defects in her Complaint. "[R]eputational injury that derives directly from government action will support Article III standing to challenge that action." *Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003); *accord Meese v. Keene*, 481 U.S. 465, 473–77 (1987); *see Lebron v. Rumsfeld*, 670 F.3d 540, 562 (4th Cir. 2012). However, where the challenged conduct merely has an "incremental effect" on the plaintiff's preexisting and related reputational injury, it may be insufficient, standing alone, to confer standing. *See Lebron*, 670 F.3d at 562.

Here, as above, Plaintiff merely offers new arguments that were previously available to her, rather than attempt to cure the deficiencies in her pleading. A motion to amend a complaint is not the proper vehicle to offer new arguments in favor of standing based on the *same factual allegations* the Court already held insufficient. *See Wagner Equip. Co. v. Wood*, 289 F.R.D. 347, 351 (D.N.M. 2013) (explaining that Rule 15 may not be used "to salvage a lost case by untimely suggestion of new theories of recovery [or] to present theories seriatim in an effort to avoid dismissal"). Nor, for that matter, would this be the proper subject of a motion for reconsideration. *See, e.g.*, *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001) ("[A] motion to reconsider is not a license to reargue the merits or present new evidence." (citing *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992))).

In any event, the Court concludes that Plaintiff's new arguments are meritless. As an initial matter, Plaintiff has not even amended her Complaint to reflect these newly claimed injuries— the proposed Amended Complaint does not include *any* allegations of social stigma or

reputational harm. Plaintiff asserts these injuries as the basis for her standing in her Motion; however, "for the purposes of a motion to dismiss, Plaintiff is bound by her Complaint and cannot amend it through her briefs." *Stahlman v. United States*, 995 F. Supp. 2d 446, 453 (D. Md. 2014); *accord Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D. Md. 1997) (noting that plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint").

Even if Plaintiff had included these purported injuries in her proposed Amended Complaint, she still would not have standing. Plaintiff does not dispute that she entered the United States without inspection (a federal crime).[4] *See* 8 U.S.C. § 1325(a). She does not dispute that she was subject to a final order of removal. *See* 8 U.S.C. § 1229a. She does not dispute that the Attorney General has the authority (and duty) to detain and remove any alien, like her, that has been ordered removed, 8 U.S.C. § 1231, and that he may issue civil warrants of removal in order to carry out that duty, 8 U.S.C. § 1226. In other words, Plaintiff does not dispute that she is properly classified as an immigration violator. Instead, she argues that placing her identification information with the notation "cleared" in an "Immigration Violator File" within a larger "crime" database constitutes a free-standing, reputational injury sufficient to confer standing. The Court disagrees.

At most, Plaintiff's "cleared" record in NCIC has an incremental effect on her reputation "over and above that caused by" her actual, undisputed status as an immigration violator. *Lebron*, 670 F.3d at 562 (quoting *McBryde v. Comm. to Review Circuit Council Conduct*, 264 F.3d 52, 57 (D.C. Cir. 2001). In other words, Plaintiff presumes that she is stigmatized based on her inclusion in the Immigration Violator File while ignoring the possibility that the harm to her

---

[4] Plaintiff has not been charged or convicted of entering without inspection. However, because Plaintiff was ordered removed in absentia by an immigration judge, she was necessarily found inadmissible by "clear, unequivocal, and convincing evidence." 8 U.S.C. § 1229a(b)(5)(A).

reputation, if any, in fact flows from her uncontroverted status as an immigration violator. *See In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay*, 700 F.Supp.2d 119, 134 (D.D.C. 2010) ("Petitioners also ignore the fact that the alleged stigma may derive from the underlying conduct for which they were previously detained at Guantanamo, as opposed [to] their prior designation as enemy combatants.").

The fact that NCIC is nominally a "crime" database does not change this calculus. First, the Court is not convinced that Plaintiff may assert stigma or reputational harm based on information that is not widely disseminated or available to the public. *See, e.g.*, *Bishop v. Wood*, 426 U.S. 341, 348 (1976) (finding that communication that "was not made public, . . . cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was . . . impaired"). But assuming that she can, including her information in NCIC does not paint her with as broad a brush as she claims. The NCIC database includes twenty-one files, including at least four of which (in addition to the Immigration Violator File) contain identification records on individuals who need not have committed a crime. For instance, the "Missing Persons File" includes "[r]ecords on individuals, including children, who have been reported missing to law enforcement. FBI, *National Crime Information Center (NCIC)*, *available at* https://www.fbi.gov/services/cjis/ncic (last accessed April 10, 2018). The "Identity Theft File" includes "[r]ecords containing descriptive and other information that law enforcement personnel can use to determine if an individual is a *victim* of identity theft." *Id.* (emphasis added). The "Protection Order File" includes "[r]ecords on individuals against whom protection orders have been issued," which presumably would include civil protection orders. *Id.* And the "Unidentified Persons File" includes "[r]ecords on unidentified deceased persons, living persons who are unable to verify their identities, unidentified victims of catastrophes, and

recovered body parts." *Id.* All of these files contain identifying information about people in a "crime" database who have not themselves been convicted of a crime (or at least need not have been).

Indeed, the entire premise of Plaintiff's Complaint is that NCIC includes noncriminal information, a fact which certainly cannot elude the thousands of law enforcement personnel who regularly access the database for various purposes. Plaintiff herself even alleges that when Officer Farrelly accessed the NCIC database it "revealed that [she] had only an outstanding administrative warrant of removal, *and no criminal record*. (ECF No. 1, ¶ 21; ECF No. 43-1 (emphasis added).) Thus, based on Plaintiff's own allegations, the information about her in NCIC accurately conveys to law enforcement personnel that she does not have a criminal record. It appears that Plaintiff's actual concern is that law enforcement personnel may erroneously conflate a civil warrant of removal (or simply a "cleared" record) with a criminal arrest warrant. However, the facts of this case bely that concern: Officer Farrelly did not independently arrest Plaintiff based on the civil warrant he found in NCIC but instead called ICE and arrested her only after receiving direction to do so.

In sum, Plaintiff's (un)alleged reputational injury based on the inclusion of accurate information about her in NCIC is insufficient, standing alone, to confer standing, and therefore her proposed Amended Complaint would be futile.[5]

---

5   Plaintiff also asks that the Court allow her jurisdictional discovery "to determine why her information was cleared from the NCIC database, the nature of the information about her remaining in the database, how that information is used by state and local law enforcement officers, and under what circumstances immigration information about her will be re-entered into the database." (ECF No. 43, at 2.) The Court has "broad discretion in [its] resolution of discovery problems," including whether to allow for limited jurisdictional discovery. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). The Court finds that jurisdictional discovery is not warranted because none of the specific topics cited by Plaintiff are relevant to her standing. First, "why her information was cleared from the NCIC database" is irrelevant to her injury, or lack thereof. In any event, the Federal Defendants have already indicated that the information was cleared after Plaintiff was arrested. Second, unless the Federal Defendants are misleading the Court (and there is no reason to believe that is the case), "the nature of the information about her

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File Amended Complaint will be DENIED.

DATED this 12th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

remaining in the database" is already known. Third, discovery into "how that information is used by state and local law enforcement officers" is a strikingly open-ended request that would presumably involve third-party discovery. And, in the unlikely event that a statistically significant number of state and local law enforcement officers (presumably based on sampling) indicated they would arrest someone based on a "cleared" record in NCIC, this would not be a valid basis for standing. Such an arrest would be unlawful and therefore far too speculative to confer standing. *See Lyons*, 461 U.S. at 103 (noting that, in evaluating standing, courts "assume that [individuals] will conduct their activities within the law"). Likewise, Plaintiff's desire to learn "under what circumstances immigration information about her will be re-entered into the database" is too speculative to support standing. Indeed, this information—*why* she may again be placed in NCIC—is one step further removed from the argument rejected by the Court *supra*, that she "may again be unlawfully entered into the NCIC system." (ECF No. 43-1, ¶ 51 (emphasis added).)