# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MIRNA RUBIDIA ARTIGA CARRERO,** | * | |
| Plaintiff, | * | |
| v. | * | **CIVIL NO. JKB-16-3939** |
| **CHRISTOPHER FARRELLY, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Mirna Rubidia Artiga Carrero ("Plaintiff") filed a five-count Complaint against various state and federal officials and entities seeking declaratory and injunctive relief, compensatory damages, and punitive damages stemming from her alleged unlawful arrest in 2014, which she contends was caused in part by federal policy regarding the identification and apprehension of aliens, like her, that are subject to a final order of removal. Defendants the United States of America; Jefferson B. Sessions III, Attorney General of the United States; Elaine C. Duke, Acting Secretary of the Department of Homeland Security ("DHS"); and Thomas D. Homan, Acting Director of Immigration and Customs Enforcement ("ICE") (the "Federal Defendants") filed a motion to dismiss, *inter alia*, Count Five of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which the Court granted. (Order, ECF No. 34.) Now pending before the Court is Plaintiff's Motion to Reconsider that Order. (ECF No. 44.) For the reasons set forth below, Plaintiff's motion will be DENIED.

## I. Background[1]

In its previous Memorandum and Order, the Court held that it lacked jurisdiction over Count Five of Plaintiff's Complaint, which alleged that the Federal Defendants caused Plaintiff to be falsely arrested and imprisoned and sought damages under the Federal Tort Claims Act ("FTCA"). Specifically, the Court found that Plaintiff's tort claims against the United States brought pursuant to the FTCA's waiver of sovereign immunity were barred by 8 U.S.C. § 1252(g), which strips federal courts of jurisdiction to "hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." (Memorandum, ECF No. 33, at 32 (citing *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999)).) The Court found that "the decision to arrest Plaintiff (and the request that Officer Farrelly do so) constitute[d] a decision or action to *execute* a removal order," and therefore the Court lacked subject matter jurisdiction over her intentional tort claims in Count Five. (*Id.* at 33 (emphasis added).) The Court, however, concluded that "Plaintiff's claims regarding the Federal Defendants' decision to enter her civil warrant in the NCIC database d[id] not arise from a decision or action to execute a removal order," and therefore were not jurisdictionally barred by § 1252(g). (*Id.* at 34.)

The Federal Defendants raised several other defenses to Plaintiff's tort claims, including that they were jurisdictionally barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), and that Plaintiff failed to state a valid claim for false arrest and imprisonment under Maryland law. The

---

[1] The relevant factual background underlying Plaintiff's Complaint is set forth in the Court's previous order and need not be repeated here.

Court did not address these arguments because it was unnecessary to do so in light of the Court's conclusion that § 1252(g) barred these claims in their entirety.

## II. Standard for Motion to Reconsider

Plaintiff now asks that the Court reconsider its Order dismissing Count Five of the Complaint. Specifically, she seeks reconsideration pursuant to Federal Rule of Civil Procedure 60(b), which provides that the Court "may relieve a party . . . from a final judgment, order or proceeding" due to "mistake, inadvertence, . . . [or] other reason that justifies relief." However, the Court's previous order left unresolved two of Plaintiff's claims against the Federal Defendants and all of her claims against the State Defendants. Accordingly, despite being styled as a Rule 60(b) motion, Plaintiff's motion is more properly considered under Federal Rule of Civil Procedure 54(b), which governs reconsideration of orders that do not constitute final judgments in a case (i.e., interlocutory orders). That rule provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Fed. R. Civ. P. 54(b).

While relevant as a matter of procedural *principle*, it makes little to no difference in *practice* whether Plaintiff's claim is evaluated under Rule 60(b) or 54(b). Rule 54(b) motions "are not subject to the strict standards applicable to motions for reconsideration of a *final* judgment" under Rules 59(e) and 60(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (emphasis added). Yet, even though "the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, courts frequently look to these standards for guidance in considering such motions." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015) (citation omitted). Under Rule 59(e), a motion to amend a final

judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). And under Rule 60(b), a court may grant relief from a final judgment or order for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief." *Butler*, 307 F.R.D. at 449 (citing Fed. R. Civ. P. 60(b)). Although there may be many valid reasons to reconsider an order, "a motion to reconsider is not a license to reargue the merits or present new evidence" that was previously available to the movant. *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001) (citing *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992)). As another judge of this Court has astutely explained:

> Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order. It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it.

*Potter v. Potter*, 199 F.R.D. 550, 5553 (D. Md. 2001). In other words, a motion to reconsider is not a vehicle to advance new arguments not previously articulated with clarity after those that were made have been rejected.

## III. Analysis

Plaintiff contends that the Court should reconsider its Memorandum and Order dismissing her tort claims "because it appears to have been based on an inadvertent misapprehension of [her] allegations." (Mot. to Reconsider, ECF No. 43, at 3.) Plaintiff argues that, although she set

4

forth two, alternative grounds in support of her tort claims, the Court failed to address one of these grounds in dismissing the claims for lack of subject matter jurisdiction. Plaintiff is correct.

In her Complaint, Plaintiff alleged the following with regard to her fifth cause of action:

> 64. DHS employees' unlawful entry of the civil administrative warrant against Ms. Artiga into NCIC and its dissemination to state and local law enforcement offices caused Ms. Artiga to be unlawfully and tortiously arrested and imprisoned.
>
> 65. The inducement and encouragement of Officer Farrelly's unlawful behavior by the ICE officials with whom he communicated on the day he stopped Ms. Artiga further caused Ms. Artiga to be unlawfully and tortiously arrested and imprisoned.

(ECF No. 1, ¶¶ 64–65.) In addressing the scope of the jurisdiction stripping provision found in 8 U.S.C. § 1252(g), the Court held that the Federal Defendants' decision to *arrest* Plaintiff constituted a decision or action to execute a removal order. This action corresponds to the conduct alleged in Paragraph 65 of Plaintiff's complaint, and she does not challenge the Court's holding in this regard. She does, however, contend—correctly—that the Court's Memorandum failed to address the portion of her FTCA claim based on DHS employees' entry of her civil administrative warrant into NCIC (i.e., the conduct alleged in Paragraph 64 of her Complaint). Notably, the Court found that Plaintiff's claims for *injunctive* relief in Counts Three and Four, which were also based on the entry of her information into NCIC, were not jurisdictionally barred by § 1252(g). In other words, the Court dismissed the entirety of Plaintiff's fifth cause of action based solely on the jurisdiction stripping provision of § 1252(g), despite finding that some of the conduct alleged in support of that claim did not fall within the ambit of § 1252(g).

The Court, however, remains under a continuing obligation to ensure its jurisdiction, particularly in a suit such as this based on an alleged waiver of sovereign immunity. Moreover, as previously noted, the Court did not address a number of other arguments—including other jurisdictional arguments—for dismissal advanced by the Federal Defendants. One such

5

argument was that Plaintiff failed to show that the DHS employees that she claims entered her civil administrative warrant into NCIC fall within the law enforcement proviso of the FTCA, *see* 28 U.S.C. § 2680(h). Defendants are correct, and this deficiency requires that the Court again dismiss Plaintiff's FTCA claim for lack of subject matter jurisdiction.

### A. *The FTCA*

As a general principle, the United States is immune from tort suit for the actions of its employees committed within the scope of their employment. *See, e.g.*, *Dalehite v. United States*, 346 U.S. 15, 30 (1953) ("[N]o action lies against the United States unless the legislature has authorized it."); *accord Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017). "Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The FTCA represents just such a statutory waiver; however, by its terms, it applies to a narrow class of claims. Specifically, the Act confers jurisdiction on district courts "for claims brought against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of employment, accepting liability in the same manner and to the same extent as a private individual would have under like circumstances." *Wood*, 845 F.3d at 127; *see* 28 U.S.C. § 1346(b)(1). The Act also contains a number of explicit exceptions to its general waiver of sovereign immunity, including one for claims alleging intentional torts such as those brought by Plaintiff. *See* 28 U.S.C.§ 2680. Importantly, the FTCA, like any other waiver of sovereign immunity, must be "strictly construed . . . in favor of the sovereign." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)); *accord Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995) ("Being a waiver of sovereign

immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States.").

The Government's assertion of sovereign immunity deprives the Court of subject matter jurisdiction. *Medina v. United States*, 259 F.3d 220, 223–24 (4th Cir. 2001). ("[T]he Government's potential immunity from suit affects our jurisdiction[.]"). Accordingly, because Plaintiff bears the burden of establishing the Court's subject matter jurisdiction she also "bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984)). The FTCA provides such a waiver and "serves to convey jurisdiction when the alleged breach of duty is tortious under state law." *Medina v*, 259 F.3d at 223. However, the FTCA's waiver of immunity is narrow and contains numerous explicit exceptions.

To meet her burden, Plaintiff must, at minimum, "invoke jurisdiction by pleading facts that facially allege matters outside of [an FTCA] exception." *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009) (collecting cases); *see also Stewart v. United States*, 199 F.2d 517, 520 (7th Cir. 1952) ("It is a universal rule . . . that a party who invokes the jurisdiction of a federal court must allege all facts necessary to give the court jurisdiction of the subject matter."). Notably, however, the Fourth Circuit goes one step farther than many of its sister circuits and places a heightened burden on plaintiffs to *affirmatively show* that the government's conduct does not fall within one of the exceptions to the FTCA's general waiver of immunity. *See Wood*, 845 F.3d at 127 ("Because waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction *and* showing that none of the FTCA's exceptions apply." (emphasis added)); *Welch*, 409 F.3d at 651 ("[I]t is

7

the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists *and* that none of the statute's waiver exceptions apply to his particular claim." (emphasis added)); *see* 14 Charles Alan Wright et al., *Federal Practice and Procedure* § 3658 (4th ed.) (noting circuit split and collecting cases).

### B. The Law Enforcement Proviso, 28 U.S.C. § 2680(h)

Plaintiff has not met her burden to show that an unequivocal waiver of sovereign immunity exists as to her claim, and therefore her claim must be dismissed for want of jurisdiction. Specifically, she has failed to establish that her claim falls within the law enforcement proviso to the FTCA. Section 2680(h) of the FTCA "exempts claims for certain intentional torts, including those for false imprisonment [and false arrest], from the waiver of sovereign immunity." *Welch*, 409 F.3d at 651. However, the FTCA also provides an exception to this exemption for claims arising out of the "acts or omissions of *investigative or law enforcement officers* of the United States Government." 28 U.S.C. § 2680(h) (emphasis added). This exception is known as the law enforcement proviso: It is a *narrow* waiver of sovereign immunity by the government for a *particular* set of intentional torts committed by a *particular* class of government employees— investigative or law enforcement officers. The Act defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

Plaintiff fails to allege sufficient facts in her complaint to establish the Court's jurisdiction. Plaintiff has done the minimum required by other circuits: She has not pleaded matters that clearly fall *within* the intentional tort exception to the FTCA. However, under binding Fourth Circuit precedent, she must do more. *See Wood*, 845 F.3d at 127; *Welch*, 409 F.3d at 651. She must plead matters that clearly fall *without* the intentional tort exception. This she has not done.

Nowhere in her complaint does Plaintiff allege that the federal actor(s) who entered her information into NCIC qualified as an "investigative or law enforcement officer" as defined by the FTCA. Rather, she merely alleges that "DHS employees" entered her information into NCIC. And while she summarily refers to DHS officials as "law enforcement officials" under her description of the parties, this conclusory allegation is not supported by any specific facts indicating why these "officials" qualify as "investigative or law enforcement officers"—i.e., facts indicating that they are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

Moreover, despite the fact that Defendants raised this very argument in their motion to dismiss Plaintiff's complaint, she failed to adequately address this pleading deficiency in her opposition to that motion. Defendants explicitly argued that, to the extent Plaintiff's false arrest and imprisonment claim was based on "ICE LESC employees entering [her] information into NCIC, Plaintiff has not carried her burden of demonstrating that such ICE employees meet the FTCA's definition of investigative or law enforcement officers." (Mem. in Support of the Fed. Defs.' Mot. to Dismiss, ECF No. 28-1, at 31.) In her response, Plaintiff offered no compelling argument or additional facts to counter Defendants and satisfy her burden. Instead, she explained that the ICE officer *who took her into custody* qualified as an investigative or law enforcement officer.[2] (ECF No. 31, at 20 (stating that "at least one of the ICE agents who was

---

[2] Plaintiff also suggested that this same officer—the one who took her into custody—was "the LESC officer involved in the maintenance and dissemination of records in the NCIC database." (ECF No. 31, at 20.) Based on this assumption, she contended that all Law Enforcement Support Center ("LESC") personnel must be "empowered to make arrests for violations of immigration law." (*Id.*) The record, however, does not support Plaintiff's allegation that the ICE agent who arrested her was also responsible for the maintenance and dissemination of records in the NCIC database. Indeed, it seems very unlikely that the ICE agent who took her into custody was also responsible for maintaining and disseminating NCIC records. ICE states:

> The Law Enforcement Support Center is a national enforcement operations facility administered by U.S. Immigration and Customs Enforcement (ICE), the largest investigative agency in the Department of Homeland Security (DHS). *The center is a single national point of contact* that

directly involved in [her] detention and arrest was empowered to make arrests").) But, even assuming *arguendo* that this were true, Plaintiff does not contend that the ICE agent who *arrested* her was the same individual who *entered* her civil administrative warrant into NCIC eight years prior to her arrest, nor would such an allegation be plausible. The arresting officer's status is simply not relevant to the portion of Plaintiff's claim that she contends the Court overlooked (and which Plaintiff herself failed to argue).

Indeed, Plaintiff arguably conceded the very issue she relies on so heavily now by failing to respond to Defendants' argument and explain how the DHS employees that she claims entered her civil warrant into NCIC qualify as investigative or law enforcement officers. *See, e.g.*, *Pledger v. Mayview Convalescent Home, Inc.*, No. 5:07-CV-235-F, 2009 WL 1010428, at *8, n.2 (E.D.N.C. Apr. 14, 2009) (finding that plaintiff who alleged discrimination on the basis of "age, race, and religion" had waived her age discrimination claim because she "ha[d] not discussed [it] in her response"), *aff'd*, 374 F. App'x 431 (4th Cir. 2010); *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003) (noting that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as

---

provides timely immigration status, identity information, and real-time assistance to local, state, and federal law enforcement agencies on aliens suspected, arrested, or convicted of criminal activity. The center protects and defends the United States by sharing timely and relevant ICE information with our law enforcement partners around the world.

*Located in Williston, Vermont*, the center operates 24 hours a day, 7 days a week, 365 days a year. The primary users of the center are state and local law enforcement officers seeking information regarding aliens encountered in the course of their daily enforcement activities. The center serves as a national enforcement operations center, responding to inquiries from federal, state, and local criminal justice agencies concerning aliens under investigation or arrested.

Law Enforcement Support Center, U.S. Immigration and Customs Enforcement (last visited April 4, 2018), *available at* http://www.ice.gov/lesc (emphasis added). Because the Court's subject-matter jurisdiction is in dispute, the Court may consider evidence outside the pleadings—including the above public information from ICE—without converting the motion to dismiss into one for summary judgment. *See, e.g.*, *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)).

conceded"), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004). In short, Plaintiff identified only one federal employee who fell within the law enforcement proviso—the ICE agent who took her into custody—seemingly conceding that the employees who entered her information into NCIC were not investigative or law enforcement officers.[3]

Even in her motion for reconsideration, Plaintiff does not argue or allege any facts that would support her contention that the DHS employees responsible for entering, maintaining, and disseminating her information are empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. Instead, she waits until her reply brief and simply states that "[t]here is . . . every reason to believe that Ms. Artiga's information was entered into the NCIC database by an individual or individuals who fit the description set forth in § 2680(h)."[4] (Plf.'s Reply in Support of Mot. for Leave to File Am. Compl. and Mot. to Reconsider, ECF No. 46, at 5.) According to Plaintiff, there is every reason to believe this because (1) "Courts have identified ICE agents as 'investigative or law enforcement officers' within the meaning of § 2680(h)."[5] (*Id.* at 4–5 (citing *Watson v. United States*, 133 F. Supp. 3d

---

[3] Plaintiff also argued that, "the nature of the conduct at issue here—entering, maintaining, and disseminating Ms. Artiga's immigration records—does not lead to the conclusion that the agents engaged in that conduct are not law enforcement officers." (ECF No. 31, at 19–20.) True, but Plaintiff misconstrues her burden. Plaintiff's argument merely establishes that she has not affirmatively pleaded herself out of court. But as noted *supra*, she must do more: She must affirmatively show that the employees who engaged in that non-investigatory, non-enforcement conduct, also were "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

[4] The "ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *See Clawson v. FedEx Ground Package System, Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

[5] As additional support, Plaintiff cites to the following statement from the Federal Bureau of Investigation's website describing NCIC: "Criminal justice agencies enter records into NCIC that are accessible to law enforcement agencies nationwide." (ECF No. 46, at 5 (citing FBI, *National Crime Information Center (NCIC)*, *available at* https://www.fbi.gov/services/cjis/ncic (last accessed Nov. 1, 2017).) The significance of this statement to the issue at hand—LESC employees' power to execute searches, seize evidence, or make arrests—it is not readily apparent to the Court. In any event, the Court finds that the FBI's general reference to "criminal justice agencies enter[ing] records into NCIC" does nothing to bolster Plaintiff's claim that the United States has waived its sovereign immunity based on the conduct of the specific DHS employees at issue here.

502, 524 (E.D.N.Y. 2015); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1297 (M.D. Ga. 2012).) However, the two cases cited by Plaintiff provide no support for her argument that the employees who entered her information into NCIC fall within the law enforcement proviso. In *Watson*, the court found that the proviso "encompasse[d] the ICE officers who arrested and detained plaintiff," 133 F. Supp. 3d at 524, and in *Lyttle*, the court found that the ICE agents who "detained and interrogated," 867 F. Supp. 2d at 1273, the plaintiff were "law enforcement officers as contemplated by § 2680(h)," *id.* at 1297. Plaintiff's argument essentially boils down to this: Because ICE agents who in fact detain and arrest aliens have the authority to arrest, it follows that all ICE employees have such authority. This is not plausible. Plaintiff's argument is contradicted by ICE's statutory and regulatory authority which make clear that some, but not all, employees have the specific powers of investigative or law enforcement officers as enumerated in § 2680(h). *See* 8 U.S.C. § 1357(a) (providing that ICE officers "authorized under regulations prescribed by the Attorney general shall have power" to "make arrests" and "conduct a search"); 8 C.F.R. § 287.5(c), (d), (e) (listing specific classes of immigration officers who have "power and authority" to "arrest," "conduct searches," and "execute warrants").[6]

In sum, Plaintiff has not met her burden to plausibly allege facts indicating that the DHS employees responsible for entering her civil administrative warrant into NCIC qualify as investigative or law enforcement officers as defined by the FTCA. Accordingly, the Court lacks jurisdiction over her intentional tort claims in Count Five of her Complaint.

---

[6] As a fallback, Plaintiff requests that she be allowed "limited jurisdictional discovery" to determine whether the DHS employees at issue fall under the law enforcement proviso. (ECF No. 46, at 5.) The Court has "broad discretion in [its] resolution of discovery problems that arise in cases pending before [it]." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). And while "limited discovery may be warranted to explore jurisdictional facts in some cases," it is not where, as here, "the pleadings contain[] no specific facts that could establish [jurisdiction]." *Id.* Accordingly, jurisdictional discovery is not warranted.

*V. Conclusion*

      For the foregoing reasons, Plaintiff's Motion to Reconsider will be DENIED.

DATED this 12th day of April, 2018.

                                      BY THE COURT:

                                      _____/s/_____
                                      James K. Bredar
                                      Chief Judge