# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MIRNA RUBIDIA ARTIGA CARRERO,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-16-3939 |
| **CHRISTOPHER FARRELLY, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Mirna Rubidia Artiga Carrero ("Plaintiff") filed a two-count complaint against Baltimore County Police Officer Christopher Farrelly in his individual capacity and against Baltimore County seeking declaratory relief and compensatory damages stemming from her alleged unlawful arrest in 2014. The Court previously disqualified Baltimore County Attorney James Nolan from representing Officer Farrelly going forward in this case, based on the apparent conflict of interest in his joint representation of Officer Farrelly and the County. Mr. Nolan subsequently filed a letter with the Court seeking bifurcation as a means to continue to represent Officer Farrelly. The Court construed this correspondence as a motion for reconsideration of its disqualification Order and denied it. Now pending before the Court is Baltimore County's Motion for Reconsideration of the Court's previous Order denying reconsideration of its disqualification Order. (Baltimore Cty.'s Mot. for Recons. of January 4, 2018 Mem. and Order, ECF No. 62.) For the reasons set forth below, the Motion will be denied.

## I. Background

The currently pending Motion is the latest in a series of attempts by Baltimore County to have its in-house attorneys continue to represent both Officer Farrelly and the County despite the apparent conflict of interest in such joint representation. In its original Memorandum denying Defendants' Motion to Dismiss (ECF No. 33), the Court *sua sponte* raised concerns with this joint representation, suggesting that Mr. Nolan's ethical obligation to each of his clients would require that he assert a position (or positions) adverse to one (or both) of his clients at some point in these proceedings. Indeed, the Court was concerned that Mr. Nolan had already asserted a position on behalf of the County that was materially adverse to Officer Farrelly in his Motion to Dismiss. (*Id.* at 30.) The Court, however, granted Mr. Nolan an opportunity to show that he could continue to jointly represent Defendants, conflict free.

Mr. Nolan filed a Motion cursorily dismissing the Court's concerns regarding the apparent conflict generated by his continued representation of Officer Farrelly and Baltimore County. (Christopher Farrelly and Baltimore Cty.'s Mot. Confirming Compliance with Rule 19-301.7 and Stating Why No Conflict Exists, ECF No. 40.) Attached to the Motion were affidavits from Baltimore County and Officer Farrelly purporting to give informed consent to their continued joint representation in spite of the apparent conflict cited by the Court. (ECF No. 40-2.) The Court denied the Motion and disqualified Mr. Nolan from representing Officer Farrelly. (Order, ECF No. 48.) The Court found that Mr. Nolan had not addressed its "concerns with joint representation *moving forward*," and instead "focuse[d] exclusively on his *previous* arguments asserted in Defendants' motion to dismiss." (Mem., ECF No. 47, at 5.) The Motion failed to "assuage the Court's concerns because [it] [wa]s entirely disconnected from the current posture of the case." (*Id.*)

The Court's primary concern, as expressed in its Memorandum disqualifying counsel, stemmed from Mr. Nolan's argument on behalf of the County regarding Officer Farrelly's training. Mr. Nolan has failed to address this specific concern in either his "bifurcation letter" or the currently pending Motion for Reconsideration. Given the significance of this issue, and the clear conflict that the Court is now convinced it presents, the Court's previous admonition bears repeating here:

> [I]n the case's *current posture*, defense counsel may assert that Officer Farrelly was adequately trained and acted contrary to his training, thereby avoiding liability for the County, or he may assert that Officer Farrelly's training was inadequate, thereby shifting liability from the officer to the County, but he may not assert both positions. Moreover, and more troubling, by previously asserting that Officer Farrelly was adequately trained, counsel has arguably waived a defense that would otherwise be available to Officer Farrelly.

(ECF No. 47, at 7–8.) As will be explained *infra*, upon further consideration, the Court believes that there is an *actual* conflict based on Mr. Nolan's unequivocal assertion on behalf of the County that it had trained Officer Farrelly not to detain anyone solely on the basis of a civil immigration violation.

Following the Court's disqualification Order, Mr. Nolan filed a two-page letter with the Court, "to discuss Officer Farrelly's representation going forward." (Correspondence dated Dec. 7, 2017, ECF No. 53.) Mr. Nolan informed the Court that Officer Farrelly had "requested that [Mr. Nolan] continue to represent him in this matter." (*Id.*) "To accommodate this request, [Mr. Nolan] . . . ask[ed] the Court to allow [him] to represent Officer Farrelly and to allow another attorney from []his office to represent Baltimore County." (*Id.*) The Court generously construed the letter as a motion to reconsider its disqualification Order and denied it, because the "sole ground for reconsideration offered—potential bifurcation—d[id] not resolve the conflict identified by the Court." (Mem. & Order, ECF No. 60.)

3

Mr. Nolan subsequently filed another Motion, this time expressly seeking reconsideration of the Court's Order denying his informal request for bifurcation/reconsideration. That Motion is currently pending before the Court.

## II. *Standard for Motion to Reconsider*

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case (i.e., interlocutory orders). That rule provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Fed. R. Civ. P. 54(b). "The precise standard governing a motion for reconsideration of an interlocutory order is unclear." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015). What is clear, is that such motions "are not subject to the strict standards applicable to motions for reconsideration of a *final* judgment" under Rules 59(e) and 60(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (emphasis added). "Although the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, courts frequently look to these standards for guidance in considering such motions." *Butler*, 307 F.R.D. at 449 (citations omitted). Under Rule 59(e), a motion to amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). And under Rule 60(b), a court may grant relief from a final judgment or order for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief." *Butler*, 307 F.R.D. at 449 (citing Fed.

R. Civ. P. 60(b)). Although there may be many valid reasons to reconsider an order, "a motion to reconsider is not a license to reargue the merits or present new evidence" that was previously available to the movant. *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001) (citing *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992)).

*III. Analysis*

Mr. Nolan asks that the Court reconsider its Order because bifurcation "was not the sole ground for reconsideration offered." (ECF No. 62, ¶1.) He argues that the County (in a letter seeking bifurcation which failed to state any legal standard for bifurcation or reconsideration) offered an alternative basis for reconsideration because it stated that "[i]n all events, the County will pay any judgments entered against Officer Farrelly." (ECF No. 53, at 2.) Mr. Nolan contends that this promise, combined with the County's position that Officer Farrelly acted within the scope of his employment, informed consent from Officer Farrelly and the County, and Officer Farrelly's desire that Mr. Nolan continue to represent him, eliminate any potential conflict. The Court disagrees, and therefore *Baltimore County's* Motion for Reconsideration will be DENIED.[1]

As an initial matter, the Court is troubled by Mr. Nolan's seemingly ad hoc approach to addressing this issue. In his initial response (ECF No. 40), Mr. Nolan cursorily dismissed the Court's concerns with the apparent conflict in his dual representation and then included a wholly irrelevant (and inappropriate) reference to the Court's resolution of Plaintiff's claims against the

---

[1] The Court finds it peculiar that *Baltimore County*, and not Officer Farrelly, is seeking reconsideration of the Court's Order disqualifying Mr. Nolan from representing Officer Farrelly. The Court questions whether Baltimore County even has standing to assert such a motion on behalf of Officer Farrelly. Perhaps this was simply an oversight by Mr. Nolan, but, if anything, it simply highlights Mr. Nolan's inability to distinguish between the interests of his two clients. Indeed, as discussed *infra*, this is just one of the many procedural irregularities in the correspondence and motions filed by Mr. Nolan in his mission to continue representing Officer Farrelly.

Federal Defendants in this matter. The Court then issued a detailed Memorandum disqualifying Mr. Nolan and further explaining its concerns, placing particular emphasis on Mr. Nolan's argument on behalf of the County that it had trained Officer Farrelly not to detain anyone solely on the basis of a civil immigration violation.

Mr. Nolan then submitted a letter to the Court that repeatedly referenced bifurcation as a potential solution to the conflict recognized by the Court. Admittedly, the Court was unsure how to view this letter. While the letter focused on bifurcation as a solution it did not set forth any of the relevant legal principles that govern such a request. Indeed, the letter did not even reference Federal Rule of Civil Procedure 42(b), which provides for bifurcation in multi-defendant cases such as this. It appeared that Mr. Nolan was in fact seeking reconsideration of the Court's disqualification Order on the ground that the Court had not considered bifurcation, yet he did not explicitly request reconsideration or set forth the relevant legal standard for such a request. Mr. Nolan, of course, had not previously advanced this bifurcation argument, and, in any event, the Court found that bifurcation would not cure the danger for abuse stemming from the conflict in Mr. Nolan's representation of Officer Farrelly.

Mr. Nolan then filed the instant Motion. The pending Motion, although clearly labeled as a Motion for Reconsideration, again fails to set forth any of the relevant legal standards for reconsideration of an Order. The Court is again left to hypothesize as to the specific grounds for Mr. Nolan's Motion. The Court assumes that Mr. Nolan is seeking relief from the Court's Order based on "mistake," *Butler*, 307 F.R.D. at 449, under the theory that he in fact advanced two, alternative and independent grounds for reconsideration in his "bifurcation letter."

In short, Mr. Nolan's inattention to the Local and Federal Rules does not help his cause to remain counsel for Officer Farrelly in the face of an apparent conflict in his representation.

The Court disagrees that it mistook Mr. Nolan's letter. Mr. Nolan indicated that the "purpose of th[e] letter" was "to see if the Court [wa]s amenable to the following request": "to allow [Mr. Nolan] to represent Officer Farrelly and to allow another attorney from []his office to represent Baltimore County." (ECF No. 53.) Mr. Nolan framed this request for bifurcation as a means to resolve "any conflicts." (*Id.*) In support of this request, the letter cited this Court's previous statement, in a different context, that "bifurcation of municipal or supervisory liability claims are common." (*Id.* (quoting *Glover v. Carroll Cty. Sheriff's Dep't*, Civil No. JKB-13-3192, 2014 WL 1330943, at *14 (D. Md. Apr. 2, 2014).) Mr. Nolan explained that his solution could be "implemented without any conflicts *if* the Court" granted a motion to bifurcate. (*Id.* (emphasis added).) He also stated that the County would pay any judgment entered against Officer Farrelly, "*[i]f* the Court grants bifurcation." (*Id.* (emphasis added).) Given the overarching context of the letter, and Mr. Nolan's two conditional statements tying his proposed resolution to the Court's grant of a motion to bifurcate, Mr. Nolan is mistaken in suggesting that the County offered to indemnify Officer Farrelly as an alternative *and independent* ground for reconsideration. Even if bifurcation was not the sole ground offered for reconsideration, it was certainly a necessary element of Mr. Nolan's proposed "arrangement." (ECF No. 53.)

Regardless, the letter's closing line that, "in all events," the County would pay any judgments entered against Officer Farrelly does not resolve the conflict in Mr. Nolan's representation of Officer Farrelly. Throughout his various filings on this issue, Mr. Nolan has yet to address the Court's primary concern: the County's training argument.

As previously explained by the Court, the central issue remaining in this case is the reasonableness of Officer Farrelly's conduct within a narrow window of time. The relevant time period began with Officer Farrelly's decision to stop Plaintiff's vehicle and ended with his

7

communication with ICE. Plaintiff has plausibly alleged that Officer Farrelly detained her for an unreasonable period of time based solely on her civil immigration status—a violation of Plaintiff's constitutional rights. Officer Farrelly, however, arguably is entitled to qualified immunity for this constitutional violation unless he "*knew or reasonably should have known* that the action he took . . . would violate the constitutional rights of the [plaintiff]." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). In other words, he is entitled to qualified immunity if the constitutional right at issue was not clearly established.

In determining whether a constitutional right is clearly established or not for purposes of qualified immunity courts must consider whether "any reasonable official *in the defendant's shoes* would have understood that he was violating it." *Plumhoff v. Rickard*, --- U.S. ----, 134 S. Ct. 2012, 2023 (2014) (emphasis added); *accord Maney v. Garrison*, 681 F. App'x 210, 215 (4th Cir. 2017). Thus, although the inquiry is objective, it focuses on the specific circumstances at issue, including the characteristics of the defendant. Accordingly, a reasonable officer's understanding of clearly established law in a given circumstance depends on that officer's training. *New v. Denver*, 787 F.3d 895, 901 (8th Cir. 2015) (holding that defendant-officer was entitled to qualified immunity because "an objectively reasonable police officer *with [defendant's] training and experience* could have reasonably believed that [he had] probable cause to arrest" (emphasis added)); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (affirming district court's denial of qualified immunity where officers' conduct was inconsistent with their "training and existing case law at the time"); *Gottlieb v. Cty. of Orange*, 871 F. Supp. 625, 629 (S.D.N.Y. 1994) (finding that county employees were entitled to qualified immunity because, "*[g]iven the procedures and training they were given*, it was objectively reasonable for

the[m] . . . to believe that their acts . . . did not violate the plaintiffs' constitutional rights" (emphasis added)), *aff'd*, 84 F.3d 511 (2d Cir. 1996); *see Bowyer v. Houck*, No. 5:05-CV-00628, 2006 WL 6854908, at *2 (S.D.W. Va. Nov. 14, 2006) (finding that town's use of force policy was relevant to officer's entitlement to qualified immunity because, "[c]learly, an objectively reasonable officer would consider his training when making a split-second decision to use [force]").

Accordingly, Officer Farrelly's training, or lack thereof, is highly relevant to what he "*knew or reasonably should have known*," *Harlow*, 457 U.S. at 815, under the circumstances, and therefore whether he is entitled to qualified immunity. If Officer Farrelly was not adequately trained regarding the extent of his authority to detain someone like Plaintiff based solely on a civil immigration violation, it may have been reasonable for him to believe that he was following clearly established law under the circumstances. Indeed, the Court has already held that Plaintiff plausibly alleged that the County failed to train Officer Farrelly in how to handle this very situation. Moreover, Plaintiff has alleged that the County Police Department Field Manual, which sets forth procedures and policies regarding stops and arrests, in fact may have *encouraged* Officer Farrelly to act as he did. If this is proven true, Officer Farrelly would have an even stronger argument that a reasonable officer, "in [his] shoes," *Plumhoff*, 134 S. Ct. at 2023, would not have known that his conduct violated Plaintiff's constitutional rights.

Yet, Officer Farrelly's attorney, on behalf of his other client—the County—has already unequivocally stated that Officer Farrelly was trained to understand that he could not detain an alien like Plaintiff based solely on suspicion of a civil immigration violation. This argument, of course, makes perfect sense for the County in its effort to avoid *Monell* liability for failing to adequately train Officer Farrelly. However, it foreclosed a potential (and plausible) qualified-

9

immunity defense that Officer Farrelly could have presented.[2]  Indeed, the Court is now more convinced than ever that the training argument advanced by Mr. Nolan on behalf of the County reveals a very likely *actual* conflict of interest in his representation of Officer Farrelly and the County.[3]  *See, e.g.*, *United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991) ("When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one" and that "action of necessity will adversely affect the appropriate defense of the other").

Given this extant conflict, and the serious potential for continued conflict, the Court simply cannot envision a scenario in which independent counsel for the defendants would not better serve their individual interests as well as the integrity of the judicial process itself.

## IV. Conclusion

For the foregoing reasons, Baltimore County's Motion for Reconsideration (ECF No. 62) will be DENIED.  Further, the Defendants will be DIRECTED to RECTIFY this conflict FORTHWITH.

---

[2] The Court has already denied Officer Farrelly's motion to dismiss on qualified immunity grounds. However, Officer Farrelly may raise this defense again at a subsequent stage in the proceedings prior to trial (e.g., summary judgment). *See, e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (explaining that defendant may raise qualified-immunity defense at "successive stages" in litigation prior to trial). The Court is hard pressed to see a way that Mr. Nolan can fully and fairly investigate the training issue on behalf of both Officer Farrelly and the County during discovery. Indeed, he may have already waived any such argument on Officer Farrelly's behalf.

[3] The Court is hesitant to state definitively that Mr. Nolan's argument on behalf of the County has adversely affected the defense of Officer Farrelly. It may well be that Officer Farrelly could not credibly contend that he received inadequate training regarding the circumstances at issue here. To the extent Mr. Nolan considered this defense on Officer Farrelly's behalf and rejected it because it was not credible (*and* conveyed this to his client, Officer Farrelly), he has not indicated as much to the Court. Instead, he has steadfastly refused to engage with the substance of the Court's concerns regarding this argument. Moreover, had Mr. Nolan advanced such a defense on Officer Farrelly's behalf, it would have been directly adverse to the interests of his other client—the County. At the very least, the Court believes that Officer Farrelly would have benefitted from a non-County attorney holistically reviewing the adequacy of his training and considering whether an argument could be made that his training in fact encouraged him to detain Plaintiff or, at the very least, left him unsure of what to do in an admittedly complex situation.

DATED this 19th day of April, 2018.

                                        BY THE COURT:

                                        _____/s/_____
                                        James K. Bredar
                                        Chief Judge